IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN S. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:12-CV-2372 |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 15). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Brian Thompson's applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

### I.  PROCEDURAL HISTORY & PERSONAL BACKGROUND

Plaintiff Brian Thompson ("Plaintiff" or "Thompson") filed applications for Supplemental Security Income benefits and Disability Insurance benefits on October 24, 2011. (Tr. 22, 207, 214).  Thompson alleged he became disabled on March 31, 2008 due to suffering

1

from groin pain and depression. (Tr. 207-22, 244). The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 165-71, 174-79).

At Thompson's request, administrative law judge ("ALJ") Penny Loucas convened an administrative hearing on July 3, 2012 to evaluate his applications. (Tr. 30-96). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Bret Sulkin, also appeared and testified. (*Id.*). On July 19, 2012, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 12-24). After applying the five-step sequential analysis,[1] the ALJ determined Thompson retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 7). The Appeals Council denied the request

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

for review, making the ALJ's July 19, 2012 determination the final decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Thompson was born on April 13, 1965, and was 46-years-old on the date his application was filed. (Tr. 109). Accordingly, he was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff completed the eleventh grade and had previous work experience as an auto technician, housekeeper/cleaner, cashier, machine tender, construction laborer, and maintenance worker. (Tr. 80-81).

## II. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Brian S. Thompson was insured for a period of disability and disability insurance benefits on the March 31, 2008 alleged onset date, and he remained insured for these benefits through June 30, 2012.

2. The claimant has not engaged in any disqualifying substantial gainful activity since the March 31, 2008 alleged onset date.

3. The claimant has had the following severe impairments since the March 31, 2008 alleged onset date: neurologic groin pain, a mood disorder, and a personality disorder.

4. Since the March 31, 2008 alleged onset date, the claimant has not had an impairment, or combination of impairments, that has met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Since the March 31, 2008 alleged onset date, and with the exception of possible briefer periods of less than 12 consecutive months, the claimant has retained the residual functional capacity to perform all the basic work activities described in 20 C.F.R. 404.1521, 404.1545, 416.921, and 416.945 within the following parameters: he can lift/carry up to 10 pounds frequently and up to 20 pounds occasionally, and he can stand and/or walk up to four hours in an eight-hour period. However, the claimant has not been able to climb ladders, ropes or scaffolds, or stoop, kneel, crouch or crawl more than frequently. The claimant has also been limited working in jobs that have specific vocational profiles of 1, 2, or 3. The claimant has also been able to maintain his attention, concentration and persistence in performing work within the above-mentioned parameters for up to two hours at a time over a normal eight-hour workday and normal workweek. The claimant has also been restricted to working in jobs where he would not have to interact with members of the public, and in jobs where he would not have to

    interact with co-workers and/or supervisors more than occasionally.  The claimant has also been restricted to working in jobs where changes in the job routine would be no more than minor changes.

6. The claimant has been unable to perform any past relevant work since the March 31, 2008 alleged onset date.

7. The claimant, who was born on April 13, 1965, has been considered to be a younger individual in the "18 to 49" age group ever since the March 31, 2008 alleged onset date.

8. The claimant has a limited education, and he is able to communicate in English.

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

10. Having considered the claimant's age, education, work experience, and residual functional capacity, the undersigned concludes that there are jobs that exist in significant numbers in the economy that the claimant has been able to perform since the March 31, 2008 alleged onset date.

11. Brian S. Thompson has not been under a disability, as defined in the Social Security Act, at any time between the March 31, 2008 alleged onset date and the date of this decision.

(Tr.14-23) (internal citations omitted).

### III. DISABILITY STANDARD

    A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

    Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal

4

standards. *See Cunningham v. Apfel*, 12 Fed.Appx. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V.  ANALYSIS

### A.  State Agency Reviewing Consultants

Plaintiff maintains that the ALJ erred in evaluating the opinions of state agency consultative reviewers Irma Johnston, Psy.D., and Karen Steiger, Ph.D.  Dr. Johnston reviewed Plaintiff's records on December 20, 2011 and concluded that Plaintiff was capable of simple routine tasks, without strict production quotas. (Tr. 117-19).  Additionally, the consultant opined that Plaintiff cannot work with the general public and social interactions with coworkers and

supervisors should be superficial and infrequent. (*Id.*). After conducting an independent review on February 6, 2012, Dr. Steiger imposed the same restrictions as Dr. Johnston. (Tr. 144-46).

The ALJ addressed the opinions of the state agency doctors in the following manner:

> The mental residual functional capacity the undersigned has assigned for the claimant is generally consistent with the opinions of the State agency psychologists . . . However, the undersigned does not find that the claimant's mental impairments have limited the claimant, over any continuous 12-month period since the March 31, 2008 alleged onset date, to work involving no more than 'simple routine tasks' as suggested by the reviewing State agency physicians. (Tr. 21-22).

Plaintiff now maintains that the ALJ erred in her evaluation of Drs. Johnston and Steiger because she failed to mention or give reason for rejecting the consultants' prohibition on strict production quotas. (Tr. 119, 146).

It is well established that for a decision to stand, an ALJ is not required to discuss every piece of evidence in the record. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). However, if a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why he did not include the limitation in his determination of a claimant's RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Social Security Ruling 96-8p states: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96–8p, 1996 WL 374184, at *7.

Here, the ALJ did not discuss why she omitted the production quotas limitation assigned by Drs. Johnston and Steiger. While the she generally questioned the consultants' limitation to simple routine tasks, the ALJ does not explain why she seemed to implicitly reject the quotas limitation by not including it in the RFC. Additionally, the remainder of the ALJ's opinion does not provide sufficient insight as to why the ALJ discounted the limitation, despite these experts'

6

recommendations and despite the ALJ's own finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 15). Because the ALJ's calculation of the RFC contradicted the consultants' opinions, S.S.R. 96-8p required the ALJ to explain her decision not to include the quota limitation in Thompson's RFC. The Commissioner argues that substantial evidence supports the ALJ's determination of Plaintiff's RFC. However, the ruling's requirement is clear: where an ALJ's RFC conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted.

There is some merit to Plaintiff's argument that he was prejudiced by the ALJ's decision not to adopt the quota limitation assigned by the state consultants. During the administrative hearing, the VE did not discuss whether an individual with quota limitations would be able to work in the positions identified as appropriate for an individual with Plaintiff's assigned RFC. Accordingly, Thompson is entitled to remand on this point. On remand the ALJ should either adopted the quotas limitation assigned by Drs. Johnston and Steiger, or explain her decision not to adopt the limitation. If the ALJ chooses to adopt the limitation, she should conduct an additional hearing to determine whether an individual with that limitation would be precluded from working in jobs available in the national economy.

B. Plaintiff's Deficiencies in Concentration, Persistence, and Pace

In an argument related to his first assignment of error, Thompson purports that the ALJ's mental RFC finding was flawed because it failed to account for the moderate difficulties in concentration, persistence, and pace that the ALJ found when reviewing the severity of his mental impairments. (Tr. 15). The RFC provided that Plaintiff could perform jobs requiring him to maintain attention, concentration, and persistence for up to two hours at a time. (Tr. 18). It

further limited Plaintiff to jobs having a Specific Vocational Profile ("SVP") of 1-3,[2] precluded interaction with the public, and allowed only occasional interaction with coworkers and supervisors. (*Id.*).

Plaintiff alleges that other than social-functioning restrictions, the RFC does not significantly restrict the basic mental duties of unskilled work. Thompson notes that in the typical workplace, an individual receives morning, lunch, and afternoon breaks in approximately two-hour intervals. *See* S.S.R. 96–9p, 61 Fed. Reg. 34478 (July 12, 1996); POMS DI 24510.005. Because employees are generally required to work for no longer than two hour increments, Plaintiff purports that the RFC's two hour restriction relating to concentration, persistence, and pace, is essentially inconsequential.

The undersigned will not determine whether the ALJ erred in this respect, because remand is required to address Plaintiff's ability to meet quota requirements. The ALJ's finding on the quota limitation may alter the controlling hypothetical question and mental RFC. At least this Court has found that a hypothetical to the VE limiting the claimant to no quotas or production line work adequately accounted for moderate limitations in concentration, persistence, or pace. *See Schooley v. Astrue,* No. 09-CV-2748, 2010 WL 5283293, at *2 (N.D. Ohio Dec.17, 2010) (hypothetical limiting the plaintiff to no "high production quotas or piece work" consistent with a moderate limitation in concentration, persistence, or pace), *but see Deaton v. Comm'r of Soc. Sec.*, 1:12-CV-531, 2013 WL 2897888 (S.D. Ohio June 13, 2013) *report and recommendation adopted,* 1:12-CV-531, 2013 WL 3455847 (S.D. Ohio July 9, 2013) (limitation barring claimant from work without strict production requirements insufficient to account for moderate limitations in concentration and persistence). While addressing the quota

---

[2] An SVP of 1-2 corresponds to unskilled work, while an SVP of 3 equates to semi-skilled work. S.S.R. 00-4p, 2000 WL 1898704, at *3.

8

limitation, the ALJ ought to give special attention to how Plaintiff's difficulties regarding concentration, persistence, and pace ought to be accounted for in the RFC.

### C. Consulting Examiners

Plaintiff also challenges the ALJ's evaluation of findings from, Mitchell Wax, Ph.D., and Babatunde Onamusi, M.D. Following a clinical consultation with Thompson on November 21, 2011, Dr. Wax opined as to Thompson's mental functional limitations in a medical source statement. (Tr. 418-23). The form Dr. Wax completed indicated that the evaluation was comprised of a clinical interview and "[a]ll other information provided was the claimant's self-report." (Tr. 418). Dr. Wax also reviewed a letter from Plaintiff's lawyer and Plaintiff's adult disability report. (*Id.*). The medical source statement indicated that "[n]o psychological testing was requested or conducted." (Tr. 422). Dr. Wax diagnosed bipolar disorder with psychotic features and personality disorder with borderline features. (*Id.*). The doctor concluded that Plaintiff would (1) have difficulty carrying out instructions on a job due to bipolar disorder, (2) experience difficulty maintaining attention and concentration on a job, (3) would have difficulty responding appropriately to coworkers and supervisors; and (4) would not respond appropriately to work pressures in a work setting. (Tr. 422-23).

On November 23, 2011, Dr. Onamusi interviewed Plaintiff, conducted a physical examination, and completed a medical source statement. (Tr. 428-30). Plaintiff complained of pain in the right groin area traveling into the right leg, back pain, occasional weakness in the right leg, and intermittent pain and stiffness in both knees. (Tr. 428). Dr. Onamuis observed that Plaintiff "walked with a prominent limp and appeared to be in moderate discomfort with ambulation and transfer." (Tr. 429). Thompson was unable to squat, stand on his heels or toes, and had difficulty kneeling. (*Id.*). Upon further examination, Plaintiff's back showed full range

9

of motion with no tenderness and negative straight leg raises bilaterally; the right knee had some limited range of motion while the left showed full range; and the right hip had pain with limited active motion. (Tr. 430). Dr. Onamusi assessed: (1) right inguinal pain, status post-surgery for hernia, pain probably neuropathic, related to nerve injury; and (2) lower back and bilateral knee pain, probably degenerative in nature. (*Id.*). The doctor opined that Plaintiff was "currently capable of engaging in sedentary physical demand level activities as defined in the Dictionary of Occupational Titles." (*Id.*).

Because the Social Security Administration gives the most weight to opinions from a claimant's "treating source," an ALJ is procedurally required to "give good reasons" in his decision for the weight assigned to the claimant's treating source's opinion. *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007). The Sixth Circuit has made clear, however, that this good reasons requirement only applies to *treating* sources. *Id.* at 876. With regard to non-treating, but examining sources—like Drs. Wax and Onamusi—the ALJ should weight their opinions by considering the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). These factors include the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and the physician's specialization. 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6).

Thompson now alleges that the ALJ failed to comply with Social Security Rulings 96-8p and 96-5p in rejecting Drs. Wax and Onamusi's medical source statements. Quoting S.S.R. 96-5p, Plaintiff explains: "Adjudicators must remember . . . that medical source statements [submitted by treating sources or consultative examiners] may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting,

10

seeing, and remembering instructions, and that it *may* be necessary to decide whether to adopt or not adopt each one." S.S.R. 96-5p, 1996 WL 374183, at *4. (emphasis added).  Although Plaintiff argues S.S.R. 96-5p mandates that an ALJ discuss each limitation included in a treating source statement and why that limitation was rejected, the text of the ruling is clearly discretionary on this matter.  However, as previously noted in this opinion, if an ALJ's RFC finding conflicts with opinions from a medical source, remand may be required unless the adjudicator explains why the opinions were not adopted. S.S.R. 96–8p, 1996 WL 374184, at *7.

In her opinion, the ALJ did not individually address each of the four limitations recommended by Dr. Wax in his treating source statement.  Nonetheless, the Court concludes that the ALJ fulfilled her duties in explaining why she rejected the one-time examiner's opinions to the extent that they were not accounted for in the RFC.  Significantly, the ALJ did not ignore the limitations Dr. Wax opined to.  Rather, the ALJ gave "little weight" to Dr. Wax's opinions, as relayed in the treating source statement, and explicitly indicated why she did so. (Tr. 15).  The ALJ explained that she was devaluing the opinions of Dr. Wax for the same reasons that the state agency doctors did: (1) Dr. Wax's opinion relied heavily on the subjective reports of symptoms and limitations provided by Thompson himself, (2) the totality of the evidence does not support Dr. Wax's opinion, and (3) the opinion was an overestimate of the severity of Plaintiff's limitations, based only on a snapshot of the individual's functioning.  These reasons are an accurate reflection of the evidence and accord with the factors set forth in the regulations, including the treatment relationship and the supportability and consistency of the opinion with the record as a whole.

Plaintiff argues that the reasons the ALJ provided to discount Dr. Wax are "boilerplate" and "unreviewable." Additionally, he notes that the ALJ ought to have referenced evidence

11

showing that Dr. Wax's opinion relied heavily on subjective reports. However, Thompson has not cited any law demanding a greater level of articulation regarding the analysis of a one-time examining physician. The ALJ correctly observed that a good part of Dr. Wax's opinion was based on Plaintiff's subjective report of symptoms, and a review of the doctor's treating source statement supports the ALJ's observation. For example, Dr. Wax found that, during the evaluation, Thompson was able to understand, remember, and carry out instructions. (Tr. 422). However, it appears that the doctor ultimately opined that Plaintiff was limited in this regard due to self-reports that Plaintiff had an inappropriate attitude at prior jobs, alienates others, and gets into conflicts with strangers. (Tr. 422-23). While Dr. Wax did objectively observe Plaintiff's psychological functioning in some respects, the state agency doctors had the opportunity to review the observations that Dr. Wax recorded when he reached his conclusions, and the ALJ was entitled to rely on the consultants' professional opinions as to the significance of those findings. (Tr. 120, 147). Furthermore, the ALJ found Plaintiff to be a less than credible source of information about his symptoms and functionality, and Plaintiff does not now take issue with the ALJ's credibility determination.

Similarly, Plaintiff's arguments regard Dr. Onamusi lack merit. The ALJ chose not to adopt Dr. Onamusi's conclusion that Plaintiff was limited to sedentary work on the grounds that Dr. Onamusi's opinion conflicted with state agency reviewing physicians' findings and gave undue weight to Plaintiff's subjective complaints.

According to Plaintiff, Dr. Onamusi's opinion did not conflict with the state agency consultants' opinions, making this an insufficient ground for the ALJ to devalue Dr. Onamusi. In their December 5, 2011 and February 6, 2012 reviews of Plaintiff's medical records, state agency examiners Dimitri Teague, M.D., and Leslie Green, M.D., recommended that Plaintiff is

12

capable of work at the sedentary level, which Plaintiff accurately notes. (Tr. 120-21, 133-34, 147-48, 162-63). However, the consultants' same reports indicated that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, and stand and/or walk for a total of 4 hours in a workday. (Tr. 116, 129, 143, 158). These limitations conform to a limited range of light work.[3] As a result, the ALJ's observation that Dr. Onamusi's sedentary finding conflicted with the state agency consultants' conclusions was accurate and grounds to question Dr. Onamusi. Rather than limiting Plaintiff strictly to sedentary work, the ALJ mirrored Plaintiff's physical RFC off the of the consultants' more specific functional findings. (Tr. 18). On the other hand, a review of Dr. Onamusi's medical source statement shows that ALJ's decision to discredit Dr. Onamsui because he attributed undue weight to Plaintiff's subjective complaints is questionable. Even so, the ALJ's previously noted inconsistency between the state consultants' and Dr. Omunsi's findings, is sufficient to support her decision to rejected Dr. Onamusi's opinion.

   Lastly, Plaintiff emphasizes that the ALJ did not mention the names or qualifications of Drs. Wax or Onamusi. Though the ALJ could have done as Plaintiff requests, the ALJ sufficiently identified both doctors, their medical records, identified them as consulting examiners, and noted the dates of their one-time examinations. Plaintiff points to no legal authority requiring greater specificity. Overall, the ALJ considered the appropriate factors and properly articulated her rationale for not fully crediting the one-time examiners. Accordingly,

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Black v. Comm'r of Soc. Sec.*, 3:09-CV-1997, 2010 WL 5129287 (N.D. Ohio Dec. 10, 2010) (*quoting* 20 C.F.R. § 404.156(b)).

the Court finds that substantial evidence supported the ALJ's treatment of Drs. Wax and Onamusi.

### D. Legal Flaws in the RFC

Plaintiff raises two additional challenges to the RFC finding. First, Plaintiff points out that the ALJ wrote that the RFC applies "with the exception of possible briefer periods of less than 12 continuous months." (Tr. 18). Thompson maintains that such a statement was improper, because the RFC finding must adjudicate how long the episodes of disabling symptoms and remissions lasted. This argument is not well taken. In her opinion the ALJ laid out the proper standard regarding the RFC determination. Specifically, the ALJ wrote:

> Social Security Ruling 96-8p states that the residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. (Tr. 18-19) (internal quotations omitted).

A review of the ALJ's RFC assessment does not indicate that she erroneously applied this standard or failed to consider Plaintiff's alleged episodic symptoms. Without more persuasive evidence from Plaintiff, the Court cannot conclude that the ALJ erred in this regard.

Finally, Plaintiff maintains the ALJ erroneously equated jobs with an SVP 1-3 to jobs involving only simple routine tasks. Thompson explains that SVP 3 occupations are higher in complexity than unskilled work and therefore require more than simple tasks. However, the ALJ did not posit that SVP 1-3 occupations involve no more than simple routine tasks. Instead, it appears that the ALJ disagreed with state agency reviewing psychologists that Plaintiff was limited to work involving no more than "simple routine tasks." (Tr. 21-22). The ALJ went on to explain that she did not strictly limit Plaintiff to simple routine tasks because, "the use of the phrase, 'simple routine tasks' does not translate seamlessly or smoothly to vocational terms. As

noted in an earlier footnote, the vocational definition of the terms SVP 1-3, is a more accurate description of the mental tasks that an individual can undertake while working." (Tr. 22).   Thus, it does not appear that the ALJ assumed SVP 3 occupations were limited to simple routine tasks.

Even if the ALJ erred as Plaintiff alleges, the error would be harmless.  The VE identified two jobs at SVP level 2, mail clerk and sewing machine operator, which Plaintiff does not now argue fail to account for a limitation to simple routine tasks or serve as substantial evidence in support of the ALJ's step five finding. (Tr. 55).  *See* DICOT 209.687-026, 191 WL 671813 (mail clerk); DICOT 786.685-030, 1991 WL 681083 (sewing machine operator, semiautomatic).

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  January 31, 2013.